1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

AUGUSTINE A. WALKER,

11                    Plaintiff,

12        v.                                    CASE NO. C04-1021JLR

13   SEATTLE HOUSING AUTHORITY,                 ORDER

14                    Defendant.

15

16

17                            **I.  INTRODUCTION**

18        This matter comes before the court on Defendant Seattle Housing Authority's

19   ("SHA") motions for summary judgment on Plaintiff Augustine Walker's ("Walker")

20   disability discrimination, race discrimination, age discrimination, retaliation, and hostile

21   work environment claims (Dkt. ## 26, 30, 34).  Having read the papers filed in support of

22   and opposition to these motions, and heard oral argument, the court GRANTS SHA's

23   motions for summary judgment on Walker's disability discrimination, retaliation, and

24   hostile work environment claims, and DENIES SHA's motions for summary judgment on

25   Walker's race and age discrimination claims.

26

27

28

ORDER – 1

## II.   BACKGROUND

Walker filed suit against her former employer, SHA, alleging multiple claims of employment discrimination under state and federal law.[1]  SHA denies Walker's claims and seeks summary judgment on her federal law claims for failure to accommodate, race and age discrimination, retaliation, and hostile work environment.

Walker is a 72-year-old African-American woman who suffers from osteoporosis, arthritis, carpal tunnel, and glaucoma.  Her career at SHA began in 1987 and continued without incident until 2002, when Walker began having trouble with her direct supervisor, Noah Atkins ("Atkins").  Prior to being terminated in August 2003, Walker worked as a Customer Service Specialist II at SHA's Porchlight Division.  According to Walker and some of her fellow co-workers, Atkins treated Walker differently than younger, non-African-American employees.  Jung Decl., at ¶ 5; Polwort Decl., at ¶ 4; Barraza Decl., at ¶ 5; Walker Dep. Test., at 128-31 (attached to Pl. Opp., Exh. 4).  For example, Atkins allegedly "shadowed" Walker more than the other employees he supervised by following her around and hovering at her desk.[2]  Polwort Decl., at ¶ 3. Atkins also allegedly belittled Walker in front of other employees, by publicly criticizing her job performance and holding her to a "100% compliance standard" unlike other employees.  Id.; Barraza Decl., at ¶ 5; Jung Decl., at ¶¶ 14-15.  In addition, Atkins

---

[1]The court previously dismissed Walker's state law claims for failure to comply with Washington's notice requirements for filing suit against a local government entity.  Order at 6-7, Dkt. # 24 (Feb. 9, 2005).  Walker's state law claims consisted of a claim for race discrimination under the Washington Law Against Discrimination, and common law claims for negligent infliction of emotional distress and negligent supervision.  Compl., at ¶ 1.

[2]Additionally, one of Walker's co-workers alleges that Atkins never "shadowed" any other employees under his supervision.  Jung Decl., at ¶ 9.

ORDER – 2

allegedly refused to give Walker a disabled parking space at Porchlight, despite giving such spaces to two Caucasian women.  Walker Dep. Test., at 128-29.

Atkins also allegedly assigned Walker more work than could reasonably be accomplished in an eight-hour shift, including daily filing, sorting and distributing daily mail and faxes[3], and assembling orientation and "lease-up" packets.  Jung Decl., at ¶ 9. The number of orientation and "lease-up" packets requiring assembly by Walker allegedly tripled between late 2001 and April 2003 due to an increase in the number of housing vouchers available to SHA.  Id., at ¶12.  Despite the increased need for packets, SHA allegedly failed to allow Walker enough time to assemble the packets and assigned her more duties.  Id.; Barraza Decl., at ¶ 5.  One of Walker's former co-workers who held her same position alleges that SHA assigned Walker a heavier workload than him, with more production-related duties.  Id., at ¶ 7.

Beyond Walker's discriminatory allegations regarding Atkins, one of Walker's co-workers alleges that Kathy Roseth ("Roseth"), the director of SHA's Porchlight Division, told her co-workers in February 2001 that she was "afraid of black women" based on a prior altercation in a park.  Barraza Decl., at ¶ 7.  At some point before August 2001, Roseth allegedly told her same co-workers that they should "watch out" for three particular SHA employees, all African-American women, because they were "out to get us."  Id., at ¶ 10. Further, both Roseth and Charles Hayashi, SHA's Human Resources Director, allegedly made comments to one of Walker's former supervisors suggesting that Walker should retire.  Id., at ¶¶ 7-8.  One of Walker's co-workers alleges that she heard Atkins tell Walker she should "take early retirement."  Polwort Decl., at ¶ 4.

---

[3]Currently, SHA has two people who sort the mail in Walker's former department. Jung Decl., at ¶ 10.

ORDER – 3

1   SHA denies discriminating against Walker and argues instead that it terminated her

2   for cause.  Prior to terminating Walker, SHA issued a series of "counseling memoranda"[4]

3   regarding Walker's alleged failure to perform her duties properly.  Hayashi Decl., Exh. A.

4   Walker allegedly failed to deliver the mail and faxes in a timely manner, opened

5   confidential mail, failed to put away files, failed to take required ten-minute breaks

6   during the day, and failed to keep enough packets assembled.  Id.  Walker's alleged

7   failure to maintain an appropriate number of assembled packets resulted in SHA

8   suspending her from work without pay on March 11, 2003 and June 24-26, 2003.  Id.

9   Following both suspensions, Walker filed grievances and contended that SHA failed to

10  provide her with sufficient time to assemble the necessary packets.  Id.  SHA upheld both

11  suspensions, finding that it had provided Walker with "ample time" to complete the

12  packets and that Walker failed to request assistance when needed, despite SHA's multiple

13  counseling memoranda recommending such a solution.

14      Walker contends that SHA's discipline increased after she filed a complaint with

15  the Equal Employment Opportunity Commission ("EEOC"), although it is unclear from

16  the record when this occurred.  Ultimately, SHA terminated Walker on August 28, 2003

17  for "failure to follow directions and meet deadlines, and unsatisfactory work performance

18  during the past year."  Atkins Decl., Exh. E.  After SHA terminated Walker, it replaced

19  her with a Caucasian woman under the age of 40.  Walker Dep. Test., at 128.

---

[4]The counseling memoranda discussed Walker's alleged performance failures and proposed solutions to prevent future problems.

ORDER – 4

# III.   DISCUSSION

## A.   Legal Standard

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint.  See U.A. Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 322-23.

## B.   Failure to Accommodate

To establish a prima facie claim for failure to accommodate under the Americans with Disabilities Act ("ADA"), Walker must show that: (1) she is disabled within the meaning of the ADA; (2) she is qualified and able to perform the essential functions of

her job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability.  Allen v. Pacific Bell, 348 F.3d 1113, 1114 (9th Cir. 2003) (citing Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999)).  SHA contends that Walker has failed to present sufficient evidence to create a genuine issue of material fact on the first element – that she is "disabled" under the ADA – and moves for summary judgment on this issue.

Under the ADA, a "disabled" person must have an impairment which substantially limits a major life activity.  EEOC v. United Parcel Serv., Inc., 306 F.3d 794, 801 (9th Cir. 2002); 42 U.S.C. § 12102(2)(A).  As defined in the Code of Federal Regulations, "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  An individual is "substantially limited" in a major life activity when the person is either "unable to perform a major life activity that the average person in the general population can perform," or is "significantly restricted" in the "condition, manner, or duration under which an individual can perform a particular major life activity as compared . . . to the average person in the general population . . . ."  29 C.F.R. § 1630.2(j).  Determining whether an individual is substantially limited in a major life activity requires courts to consider a variety of factors, including the nature and severity of the impairment, its expected duration, and its expected permanent or long-term impact.  Id.

Here, the parties do not dispute that Walker suffers from osteoporosis, arthritis, carpal tunnel, and glaucoma, or that these impairments limit Walker's major life activities to some extent.  Rather, the parties dispute whether Walker is substantially limited in the major life activities of seeing, walking, performing manual tasks, and working.  Based on the record before the court, Walker has failed to present sufficient evidence to

1    demonstrate that a genuine issue of material fact exists regarding whether she is

2    substantially limited in a major life activity.

3        Walker's first claim that her glaucoma substantially limits her vision lacks support

4    in the record.  In the Ninth Circuit, the fact that an individual suffers from "*some* visual

5    impairment does not necessarily mean that the individual is *substantially* limited in seeing

6    overall . . . . The critical inquiry is whether seeing as a whole is substantially limited for

7    purposes of daily living."  United Parcel Serv., 306 F.3d at 803 (emphasis in original).

8    Although Walker claims her glaucoma substantially limits her ability to see, her treating

9    physician states that this impairment only affects her peripheral vision in her left eye

10   while driving and that she can minimize the problem by simply looking left.  Walker

11   Decl., Exh. A. Walker's treating physician also states that her glaucoma is "well-

12   controlled using eye drops."[5]  Id.  At her deposition, Walker testified that she can see

13   "very good with those eye drops" and that her glaucoma does not prevent her from

14   driving.[6]  Means Decl., at 52.  Walker has not testified, nor does the record suggest that

15   her seeing as a whole is substantially limited for the purposes of daily living.  Thus,

16   
17   Walker's glaucoma does not substantially limit her ability to see.

18   

19       Walker's second claim that her disabilities substantially limit her ability to walk

20   also fail to create a material issue of fact.  Her sole evidence for this claim is a disabled

21   _____

22       [5]The court must determine whether Walker's glaucoma is disabling under the ADA "with

23   reference to corrective measures."  Sutton v. United Airlines, Inc., 527 U.S. 471, 488 (1999).

24       [6]The court dismisses Walker's contrary statement in her declaration filed in opposition to
     this motion that her glaucoma inhibits her driving ability.  Walker Decl., at ¶ 3.  Statements in a

25   declaration that contradict deposition testimony cannot create a genuine issue of fact sufficient to
     survive summary judgment without an explanation or attempt to resolve the disparity.  Cleveland

26   v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).  Given Walker's failure to resolve the
     discrepancy between her deposition testimony and declaration, the court dismisses Walker's

27   contrary statement in her declaration.

28   

ORDER – 7

parking permit application on which her treating physician checked a box indicating that she "is severely limited in [her] ability to walk due to arthritic, neurological, or orthopedic condition."  Walker Decl., Exh. F.  Walker stated in her deposition, however, that her foot problems and osteoporosis do not prohibit her from "walking and getting around."  Means Decl., at 47-48.  Further, the same treating physician (who filled out the application) stated that she could sit, walk, and stand, each for two and a half hours per day.  Hayashi Decl., Exh. E.  Given Walker's deposition testimony that her foot impairments do not prohibit her from walking, and her treating physician's earlier statements about her ability to walk, the court finds that she is not substantially limited in walking.

The court also rejects Walker's third claim that she is substantially limited in her ability to perform manual tasks.  "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  Toyota Motor Manuf., Ky, Inc. v. Williams, 534 U.S. 184, 198 (2002).  The only evidence provided by Walker that she is substantially limited in her ability to perform manual tasks is her treating physician's opinion that she is unable to lift more than 20 pounds or perform mechanical maintenance on office machines such as photocopiers, computers, and fax machines.  Neither one of these activities qualify as an activity of central importance to most people's lives.  See id. at 197 ("The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities.").  Thus, the court finds that Walker is not substantially limited in her ability to perform manual tasks.

Walker's fourth contention that she is substantially limited in the major life activity of working also fails.  To create a genuine issue of material fact on this issue,

ORDER – 8

Walker must demonstrate that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).  The regulations suggest courts should consider a variety of factors in determining this issue, including the geographical area to which the individual has access, and the number and types of jobs within that area utilizing similar training, skills or abilities.  29 C.F.R. § 1630.2(j)(3)(ii)(A), (B).  Rather than presenting any evidence bearing on these factors, Walker simply argues that she is substantially limited in her ability "to work in the class of work as an administrative assistant or in the broad range of jobs in various classes" when compared to the average person.  Pl. Resp., at 7.  This type of conclusory statement without sufficient supporting evidence fails to withstand a motion for summary judgment.  See Thompson v. Holy Family Hosp., 121 F.3d 537, 540 (9th Cir. 1997) (affirming summary judgment for the employer where the plaintiff offered only conclusory allegations that she could not work and failed to offer evidence relevant to the regulations).

Finally, Walker's alternative contention that she qualifies under the ADA as having a disability because SHA "regarded" her as having a disability is without merit. Although the ADA provides that an individual can qualify as having a disability if the individual is "regarded as having" a "physical or mental impairment that substantially limits one or more of the major life activities of such individual," Walker has failed to bring forth sufficient evidence that SHA regarded her impairments as substantially limiting.  42 U.S.C. § 12102(2)(C).  SHA's efforts to engage in an interactive process with Walker and to accommodate her requests do not mean that SHA regarded her as "disabled" under the ADA.  See Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 798 (9th Cir. 2001) ("[W]hen an employer takes steps to accommodate an employee's

ORDER – 9

restrictions, it is not thereby conceding that the employee is disabled under the ADA or that it regards the employee as disabled."). Even if SHA regarded Walker as "disabled" under the ADA, Walker still must establish that her impairments substantially limit a major life activity, which Walker has failed to do, as demonstrated above. Thompson, 121 F.3d at 541 ("As with real impairments, . . . a perceived impairment must be substantially limiting and significant) (quoting Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 913 (11th Cir. 1996)). Although Walker is limited to some extent by her physical impairments, they do not substantially limit her major life activities as required under the ADA.[7] Thus, the court GRANTS SHA's motion for summary judgment on Walker's failure to accommodate claim.

## C.    Race and Age Discrimination

Federal law prohibits employers from terminating an employee based on the individual's race or age. 42 U.S.C. § 2000e-2(a)(1) (Title VII prohibiting race discrimination); 29 U.S.C. § 623(a)(1) (Age Discrimination in Employment Act). To survive summary judgment, Walker must demonstrate a prima facie case of discrimination either by proceeding under the evidentiary framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or by producing "direct or circumstantial evidence that a discriminatory reason more likely than not motivated" her termination. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).[8]

---

[7]At oral argument, Walker's counsel conceded that none of Walker's impairments, standing alone, are likely sufficient to constitute a "disability" within the meaning of the ADA. Nonetheless, he argued that her impairments may constitute a "disability" in the "aggregate," without providing any supporting authority. Counsel's argument is unavailing without case or statutory authority to support it.

[8]The court assumes the McDonnell Douglas framework governing Title VII discrimination claims also applies to Walker's age discrimination claim under the Age Discrimination Employment Act ("ADEA"). Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).

ORDER – 10

Walker relies on the McDonnell Douglas framework, alleging that (1) she belongs to a protected class, (2) she performed according to SHA's legitimate expectations, (3) she suffered an adverse employment action, and (4) SHA replaced her with an individual outside the protected class. See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (citing McDonnell Douglas, 411 U.S. at 802).[9]  The amount of proof required to establish a prima facie case "is minimal and does not even need to rise to the level of preponderance of the evidence."  Id. (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)).  Here, it is undisputed that Walker belongs to a protected class (African-American, over the age of 40[10]), that she suffered an adverse employment action (termination), and that SHA replaced her with someone outside her protected class (Caucasian, under the age of 40).  Although SHA allegedly terminated Walker for poor job performance, it does not dispute (and her co-workers confirm), that Walker previously performed according to SHA's legitimate expectations before being terminated.  See Barraza Decl., at ¶ 3; Jung Decl., at ¶ 17.  Thus, the court finds that Walker has brought forth the "minimal" evidence required to demonstrate that a prima facie case of discrimination exists.  Godwin, 150 F.3d at 1220.

Consequently, the burden shifts under the McDonnell Douglas framework to SHA to produce evidence demonstrating that a legitimate, nondiscriminatory reason exists for terminating Walker.  411 U.S. at 802.  SHA has satisfied this burden by producing evidence that Walker failed to perform certain job duties consistent with SHA's

[9]Although the fourth factor differs slightly from the one employed in McDonnell Douglas, "it is widely recognized that the test is a flexible one."  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122-23, n.17 (9th Cir. 2004) (citations omitted).

[10]The ADEA protects "individuals who are at least 40 years of age."  29 U.S.C. § 631(a).

ORDER – 11

expectations, including delivering the mail and faxes in a timely manner and maintaining

a sufficient number of orientation and "lease-up" packets, among other things.  Further,

SHA employed a "progressive discipline" approach to Walker's termination beginning

with verbal warnings and written "counseling memorandum," and escalating to a one-day,

and later three-day, suspension over the course of eight months.  Neither SHA's reasons

nor its approach appear to be based on age or race and are therefore legitimate, non-

discriminatory reasons for Walker's transfer.[11]

As a result, Walker must provide evidence countering SHA's showing and

suggesting that its reasons for terminating her are mere pretext.  McDonnell Douglas, 411

U.S. at 804.  Walker may prove pretext either by direct evidence "showing that unlawful

discrimination more likely motivated the employer," or by indirect, circumstantial

evidence showing that SHA's reasons are "internally inconsistent or otherwise not

believable."  Chuang v. Univ. of Calif. Davis, 225 F.3d 1115, 1127 (9th Cir. 2000).

Although a plaintiff may survive summary judgment with a showing of "very little" direct

evidence of discrimination, a plaintiff must provide "specific" and "substantial"

circumstantial evidence.  Godwin, 150 F.3d at 1221-22.  Neither approach is exclusive,

and Walker may rely on the "cumulative effect" of both types of evidence to avoid

summary judgment.  Chuang, 225 F.3d at 1127.  "If a plaintiff succeeds in raising a

genuine factual issue regarding the authenticity of the employer's stated motive, summary

judgment is inappropriate, because it is for the trier of fact to decide which story is to be

believed."  Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir. 1993).

---

[11]The court notes that SHA's burden to produce a legitimate, non-discriminatory reason
"can involve no credibility assessment."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509
(1993).

ORDER – 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Based on the record before the court and drawing all reasonable inferences in favor of the non-moving party as the court must on summary judgment, the court finds that Walker has brought forth sufficient evidence to demonstrate that a genuine issue of fact exists.  Walker offers both direct and circumstantial evidence of pretext.  Two of Walker's former co-workers allege that Atkins (her direct supervisor), Roseth (Porchlight's director), and Hayashi (SHA's Director of Human Resources) all made comments that Walker should retire.  Barraza Decl., at ¶¶ 7-8; Polwort Decl., at ¶ 4.  Roseth's alleged statements that she was "afraid of black women" and that her co-workers should "watch out" for three SHA employees, all African-American women, because they are "out to get us," are of little evidentiary weight, if any, given that they were made two years prior to Walker's termination.[12]  Nonetheless, a plaintiff need only show "very little" direct evidence of discrimination to survive summary judgment, and the alleged age-related comments are sufficient to establish that a genuine issue of fact exists regarding whether SHA's proffered reasons for terminating Walker were pretext for age discrimination.

Walker's circumstantial evidence surrounding her job duties and performance provide "specific" and "substantial" evidence to create a material issue of fact regarding whether SHA's reasons for terminating her were pretext for race discrimination.  It is undisputed that Walker worked for SHA for 15 years almost without incident.[13]  Both Walker's former supervisor and co-worker allege that Walker was qualified and

_____

[12]The court will not consider on summary judgment whether these statements are too remote in time and unspecific as to be properly excluded from the fact finder.

[13]The record reveals that Walker received a counseling memorandum on April 26, 2002 for improperly opening confidential mail.  Hayashi Decl.

ORDER – 13

performed her job well.  Barraza Decl., at ¶¶ 3-4; Jung Decl., at ¶17.  Yet, between January 2003 and August 2003, Atkins issued Walker nine counseling memoranda and suspended her twice for failing to maintain the appropriate number of packets.  Atkins' written warnings cited Walker for everything from failing to deliver the mail at scheduled times and compiling enough packets, to minor abuses such as improperly opening an employee's pay slip and failing to take a 10-minute break on two separate occasions because she was "too busy" and had "tons of mail" to deliver.

Further, despite the allegedly tripled number of packets needed by SHA, Atkins did not give Walker additional time to complete them and allegedly assigned her more duties.  Jung Decl., at ¶ 12.  One of Walker's Caucasian co-workers under the age of 40, who held her same position, alleges that Atkins gave Walker a "heavier" workload than him, with more production-related duties.  Jung Decl., at ¶ 7.  Two of Walker's former co-workers and a former supervisor allege that Atkins belittled Walker in front of other employees and held her to a "100% compliance standard" unlike other non-African-American and younger employees.  Polwort Decl., at ¶ 3; Barraza Decl., at ¶ 5; Jung Decl., at ¶¶ 14-15.  Based on this circumstantial evidence and Walker's deposition testimony that Atkins "picked at every job, every single job I did," a reasonable fact finder could find that Atkins' reasons for terminating Walker were pretext for discrimination.  Walker Dep. Test., at 130.  Thus, the court DENIES SHA's motion for summary judgment on Walker's age and race discrimination claims.

**D.    Retaliation**

Title VII prohibits employers from discriminating against employees who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Walker must demonstrate that (1) she engaged in a protected activity, (2) SHA

ORDER – 14

subjected her to an adverse employment action thereafter, and (3) a causal link exists between the protected activity and the adverse employment action.  Porter v. Calif. Dep't of Corr., 383 F.3d 1018, 1029 (9th Cir. 2004).  If Walker satisfies this burden, then SHA must "articulate a legitimate, non-retaliatory reason for its actions."  Id.  Assuming SHA provides such evidence, then Walker bears the "ultimate burden" of submitting sufficient evidence indicating that SHA's preferred reasons are merely a pretext for a retaliatory motive.  Id.

Here, Walker devotes one sentence to her retaliation claim in opposition to summary judgment.  Pl. Resp., at 6.  The sentence refers to Walker's testimony at her deposition that "[a]ll this stress came after I filed with the EEOC."  Walker Dep. Test., at 130.  There is no evidence in the complaint,[14] moving papers, or attached exhibits establishing when Walker filed her claim with the EEOC.  Given the little attention Walker devotes to her retaliation claim, it is difficult to assess the merits.  Nonetheless, Walker's EEOC charge clearly qualifies as a protected activity[15] under Title VII, and being fired constitutes an adverse employment action.  42 U.S.C. § 2000e-3(a); Ray v. Henderson, 217 F.3d 1234, 1241-43 (9th Cir. 2000).

Walker's retaliation claim fails, however, because she fails to provide sufficient evidence that a "causal link" exists between filing the EEOC charge and being

---

[14]Walker's complaint states only, "Plaintiff's discipline increased after she filed an EEOC charge and alleged race, age, and disability discrimination, as well as retaliation."  Compl., at ¶ 13.

[15]In addition, one of Walker's former supervisors states in his declaration that Walker's "problems are also temporally proximate to certain protected actions she engaged in.  For instance, she testified for me in my administrative action against SHA in 2002.  Her problems began with her April 2002 performance evaluation."  Barraza Decl., at ¶ 9.  Walker's briefing, however, makes no reference to this *potentially* protected activity as part of her retaliation claim and it is unclear from the supervisor's statement whether the administrative action involved unlawful employment practices under Title VII.

ORDER – 15

terminated, beyond her conclusory statement in her deposition.  Ray, 217 F.3d at 1244

(finding causal link where the alleged adverse employment actions followed "close on the

heels" of plaintiff's complaints); Porter, 383 F.3d at 1030 (finding causal link when

circumstantial evidence of a "pattern of antagonism" followed the protected conduct).  On

summary judgment, the non-moving party "must set forth specific facts showing that

there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Because there is no evidence

establishing when Walker filed her EEOC charge and its temporal proximity to her

allegedly increased discipline and ultimate termination in August 2003, the court

GRANTS SHA's motion for summary judgment on Walker's retaliation claim.

**E.      Hostile Work Environment**

Title VII's prohibition against race discrimination in the workplace "encompasses

the creation of a hostile work environment."  McGinest, 360 F.3d at 1112.  To survive

summary judgment, Walker must show that (1) SHA subjected her to verbal or physical

conduct of a racial nature, (2) that was unwelcome, and (3) "sufficiently severe or

pervasive to alter the conditions of [her] employment and create an abusive work

environment."  Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2004).

To determine whether conduct was sufficiently severe or pervasive to violate Title VII,

the court must consider "all the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

a mere offensive utterance; and whether it unreasonably interferes with an employee's

work performance."  Id. (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-

71 (2001)).  The conduct at issue must be perceived as abusive, both subjectively from

Walker's perspective and objectively from the perspective of a reasonable African-

American.  McGinest, 360 F.3d at 1115.

ORDER – 16

Walker perceived her work environment as abusive as evidenced by her deposition testimony and decision to file an EEOC charge. Id., at 1113.  Yet, she fails to bring forth sufficient evidence to demonstrate that SHA subjected her to racially-based verbal or physical conduct which a reasonable African-American would find abusive.  When asked about the basis of her hostile work environment claim at her deposition, Walker stated that Atkins created a hostile work environment at Porchlight by threatening to terminate her in multiple counseling memoranda if her job performance did not improve, and by allowing her to engage in a "publicly hostile situation" with another African-American co-worker who became frustrated with Walker's filing.  Walker Dep. Test., at 134, 157-60.  Walker did not suggest at her deposition that Atkins or anyone else ever made any racially derogatory comments to her, or that she ever witnessed any racially derogatory conduct at Porchlight.[16]  The only evidence in the record involving race-based comments or conduct consists of Roseth's alleged statements two years prior to Walker's termination that she was "afraid of black women" and that three particular SHA employees, all African-American, were "out to get us."

Drawing all reasonable inferences in favor of Walker, this evidence is insufficient to avoid summary judgment on a hostile work environment claim in the Ninth Circuit. Vasquez, 349 F.3d at 643-44 (reviewing case law and finding that alleged harassing conduct, including two racial epithets directed at the plaintiff, was insufficient to create a hostile work environment); see also Nichols v. Azteca Rest. Enter., Inc., 256 F.3d 864, 870 (9th Cir. 2001) (hostile work environment existed where male plaintiff subjected to

---

[16]Although Walker's co-workers allege generally that Atkins belittled Walker in front of other employees and publicly criticized her job performance allegedly unlike other non-African-American, younger employees, they do not allege that Atkins made any specific race-based comments to Walker.

ORDER – 17

relentless insults, name-calling, and vulgarities, including taunts of "faggot" and "f--king female whore").  The court GRANTS SHA's motion for summary judgment on Walker's hostile work environment claim.

## IV.   CONCLUSION

For the reasons stated above, the court GRANTS SHA's motion for partial summary judgment on Walker's failure to accommodate claim (Dkt. # 26), GRANTS in part and DENIES in part SHA's motion for partial summary judgment on Walker's race, age, and retaliation claims (Dkt. # 30), and GRANTS SHA's motion for partial summary judgment on Walker's hostile work environment claim (Dkt. # 34).

Dated this 10th day of May, 2005.

_____
JAMES L. ROBART
United States District Judge

ORDER – 18